NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGEL PERDOMO, : | |
| : | Civil Action No. 05-1961 (SRC) |
| Petitioner, : | |
| : | **OPINION** |
| v. : | |
| : | |
| UNITED STATES OF AMERICA, : | |
| : | |
| Respondent. : | |
| : | |

**CHESLER**, District Judge

      Presently before the Court is a motion for reconsideration of the Court's January 9, 2007 Order dismissing as time-barred the petition filed by pro se Petitioner Angel Perdomo ("Petitioner" or "Perdomo") for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 [docket item no. 22]. Petitioner had moved to vacate, set aside or correct his conviction in the criminal action docketed as <u>United States v. Angel Perdomo</u>, criminal number 99-457. Respondent United States of America (the "Government") has filed an Answer taking the position that the Court should not reconsider its Dismissal Order, as it correctly dismissed the petition as time-barred. The Government alternatively argues that, and in the event the Court does grant reconsideration, that the § 2255 motion should be dismissed on its lack of substantive merit [docket item no. 26].

      The Court will first consider whether Petitioner is entitled to the remedy of reconsideration. For reasons discussed below, the Court finds that reconsideration of the January

9, 2007 Order dismissing Perdomo's habeas petition as untimely is warranted. The Court will then proceed to reconsider his § 2255 motion on its merits.

I. **RELEVANT FACTS**

    A. **Procedural Background**

On February 13, 2001, Perdomo was sentenced to a prison term of 200 months, in accordance with the United States Sentencing Guidelines, on the indicted charge that he conspired to distribute more than 500 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Perdomo appealed his conviction, which was affirmed by the Third Circuit on April 29, 2002. See United States v. Perdomo, 38 Fed. Appx. 111 (3d Cir. 2002). Perdomo did not file a petition for writ of certiorari within the 90 days provided by 28 U.S.C. §2101(c) and Rule 13.1 of the Supreme Court Rules. Accordingly, the judgment against him became final on Monday, July 29, 2002. Kapral v. United States, 166 F.3d 565, 572 (3d Cir. 1999) (explaining that when a defendant does not seek a writ of certiorari, the judgment of conviction becomes final upon the expiration of time allowed for filing a request for certiorari review).

The instant civil matter, collaterally attacking Perdomo's conviction, appeared to have been initiated on April 11, 2005. On that date, the Court docketed a pleading submitted by Perdomo entitled "Memorandum In Support of Motion To Vacate, Set Aside, Or Correct Sentence" and opened this case. In the memorandum, Petitioner asserted that he "submitted a § 2255 Motion on April 22, 2003" and that "the motion has lain fallow since that time." (Pet. Mem. In Support Of Motion To Vacate, Set Aside, Or Correct Sentence [docket item no. 1] at 1). The Court, however, had no record of the April 2003 petition, and Petitioner failed to provide

2

proof, in opposition to the Government's motion to dismiss the petition, that he had in fact filed, or at least attempted to file, his petition on or around April 22, 2003. Accordingly, and as more fully discussed in the January 9, 2007 Opinion [docket item no. 13], the petition was dismissed by Order dated January 9, 2007 [docket item no. 12] as time-barred by the one-year limitations period applicable to § 2255 actions.

Following the entry of the Order of dismissal, Petitioner wrote to the Court on May 14, 2008 [docket item no. 22] and enclosed with that letter a copy of two documents, both stamped "Received - Clerk U.S. District Court 2003 APR 25 P 2:46." One document is a pleading in the case of United States of America v. Angel Perdomo, Criminal No. 99-457, clearly labeled a "Motion To Vacate Sentence Pursuant to 28 U.S.C. S. 2255." It was signed by Angel Perdomo, proceeding pro se, and notarized by James Patton, an Attorney at Law in the State of New Jersey, on April 24, 2003.[1] The other document is a Certification of Service, also bearing the United States v. Perdomo criminal action caption, in which Mr. Patton certifies that "[o]n April 25, 2003, on behalf of Angel Perdomo, pro se, I filed an original and two of the annexed petition for post conviction relief with the Clerk, United States District Court, Newark, New Jersey" and also that he mailed a copy of the petition to Bruce Repetto in the Newark Office of the United States Attorney.[2] The Court, in response, issued an Order stating that in light of Petitioner's pro se status and in the interests of justice, it would treat the May 14, 2008 letter as a motion for reconsideration of the January 9, 2007 Order [docket item no. 23]. As directed, the Government

---

[1] Mr. Patton represented Petitioner in connection with his appeal of the conviction.

[2] Mr. Repetto was the Assistant United States Attorney who handled the criminal prosecution of Petitioner.

filed its response.

### B. Facts Relating to Perdomo's Criminal Conviction

The following is a synopsis of the facts underlying the Indictment brought against Perdomo. The summary is based on the Pre-Sentence Report.

In or about April 1998, Perdomo met with members of a drug smuggling organization seeking a New Jersey location to store cocaine shipments intended for New York area buyers. They arranged to have Perdomo's business, an automobile repair garage in New Jersey, serve as the location to off-load and store large shipments of cocaine hidden in pineapples and other produce. Jose Luis Diaz, a high-ranking member of the drug organization, promised to pay Perdomo $50,000 in exchange for use of the garage. At the direction of the organization, Perdomo purchased three vans for use in storing and transporting the cocaine deliveries.

A day or two after the meeting, a tractor trailer delivered 1,050 kilograms of cocaine hidden in crates of carrots and pineapples to Perdomo's garage. Perdomo and others unloaded the shipment and loaded crates onto two vans, which proceeded to New York City. Though one of the vans successfully delivered its shipment to a buyer, the other van was seized by police on April 29, 1998. New Jersey state police interviewed Perdomo. He told the police that the reason the van had been seen at his business was that he was "doing a brake job on the truck."

In June 1998, a shipment of 1,200 kilograms of cocaine was delivered to a warehouse in Lyndhurst, New Jersey. Carlos Rodriguez, who worked as a mechanic for Perdomo's business, helped transfer the cocaine to a truck for delivery. When it was transported to the intended buyers, and they were not ready to accept delivery, Perdomo arranged to have the cocaine stored at an acquaintance's garage. A week later, Perdomo instructed his acquaintance to load the

cocaine onto another van for delivery. Perdomo followed the shipment as it was transported from the garage to a motel in Secaucus, New Jersey, where it was picked up the next day. In return for use of the garage, Perdomo gave his friend a tow truck.

A third shipment, carrying 1,200 kilograms of cocaine, arrived in New Jersey in July 1998. It was off-loaded onto one of Perdomo's vans. Perdomo's vans were also used in transporting a shipment of 1,200 kilograms of cocaine that arrived in New Jersey in September 1998. This load was abandoned at a New Jersey rest stop due to police surveillance.

### C. Indictment, Plea and Sentencing

On August 10, 1999, a one-count Indictment was filed in the District of New Jersey charging that from March 1998 to August 10, 1999, Petitioner and Carlos Rodriguez conspired with each other and others to distribute more than 500 kilograms of cocaine, in violation of 21 U.S.C. §841(a)(1). The case against Perdomo went to trial, but after one day of trial testimony, he pleaded guilty to the Indictment. Perdomo was represented at trial and at his plea hearing by attorney Robert G. Rosenberg. At the May 24, 2000 plea hearing, Perdomo admitted his knowing and intentional participation in the conspiracy:

> Q: Did you, in New Jersey, agree with Carlos Rodriguez, Julio Ramos, Jose Luis Diaz and others to distribute more than 500 kilograms of cocaine during the period April, 1998 through August, 1999.
>
> A: Yes.
>
> Q: Did you, from approximately April, 1998 until your arrest in August, 1999 agree to distribute more than 500 kilograms of cocaine on at least three occasions in [the] northern New Jersey area by facilitating the transportation of the cocaine, by helping to tranship the cocaine from interstate tractor trailers to truck and vans for delivery in the New York metropolitan area?

5

>   A: Yes.
>
>   Q: Did you, from approximately April, 1998 until August, 1999, arrange to store cocaine until the purchasers of cocaine were ready to receive it from you?
>
>   A: Yes, sir.
>
>   Q: Did you do these acts knowingly and intentionally?
>
>   A: Yes, sir.
>
>   Q: Did you do these acts for money?
>
>   A: Yes, sir.

(5/24/00 Tr. at 25:3-23.) Counsel for the Government represented to the Court that it could prove the elements of the offense to which Perdomo pled guilty, without relying on Perdomo's testimony. (Id. at 26:2-7.)

Perdomo also testified at the plea hearing that he read the Indictment, understood the charge against him and had decided to plead because he was in fact guilty of the charge. (Id. at 9:13-25; 26:9 - 27:17.) Perdomo stated under oath that he made the decision to plead guilty voluntarily and without being pressured. (Id. at 12:5-24; 27:18-23.) He also testified that he discussed the plea with his attorney, Mr. Rosenberg, felt that his attorney had adequately answered his questions and was satisfied with Mr. Rosenberg's services. (Id. at 11:14-23; 13:5-21; 18:21-22.)

In light of these admissions and sworn statements by Perdomo, the Court accepted his guilty plea.

The Court sentenced Perdomo on February 13, 2001. He was represented at the sentencing hearing by Mr. Rosenberg and by Ismael Gonzalez, Esq. They argued for a two point

offense level decrease pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility. They also advocated an Guidelines adjustment to take into account Perdomo's minor role in the conspiracy. The Court rejected Perdomo's request for a minor role adjustment. It did, however, award the requested two-level decrease for acceptance of responsibility, after Perdomo testified, as he had at the plea hearing, that he was guilty of the offense charged. Finding a total offense level of 36, a criminal history category of I, and a resulting guideline range of 188 to 235 months, the Court sentenced Perdomo to a prison term of 200 months, five years' supervised release and a $5,000 fine.

## II.   MOTION FOR RECONSIDERATION

Rule 12 of the Rules Governing Section 2225 Proceedings for the United States District Courts provides in relevant part that, in the absence of procedure specifically prescribed by the § 2255 Rules, the Court may apply the Federal Rules of Civil Procedure to a § 2255 action. Though the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, the Local Civil Rules of the District of New Jersey do. United States v. Compaction Sys. Corp., 88 F.Supp.2d 339, 345 (D.N.J.1999).

Local Civil Rule 7.1(i) creates a procedure by which a court may reconsider its decision upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. See Bryan v. Shah, 351 F.Supp.2d 295, 297 (D.N.J. 2005); Bowers v. Nat'l Collegiate Athletic Assoc., 130 F.Supp.2d 610, 612 (D.N.J. 2001). Because reconsideration is "an extraordinary remedy," it is "to be granted "very sparingly." See NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996); Maldonado

7

v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986).  A motion under Rule 7.1(i) may be granted only if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice."  Database Am., Inc. v. Bellsouth Advert. & Publ'g Corp., 825 F.Supp. 1216, 1220 (D.N.J. 1993); North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir 1995).

The Court finds that the facts of this case justify reconsideration.  The Court's Dismissal Order was based on the untimely filing of Petitioner's § 2255 motion on April 11, 2005.  He has subsequently demonstrated to the Court that he submitted the petition to the Court for filing in or about April 2003.  Attorney James Patton certified that he filed the petition on Perdomo's behalf on April 25, 2003.  Both the § 2255 motion and the attorney certification accompanying it are stamped received by the Clerk's Office of this Court on April 25, 2003.  The Court does not require a filing fee in connection with a § 2255 action.  Yet, for some unknown reason, a § 2255 action was not opened by the Court on that date and the Court has no record of this filing.

Petitioner's right to challenge his sentence under § 2255 should not be prejudiced due to an apparent filing error by the Court.  The Court finds that the evidence presented by Perdomo of his attempt to file the petition on April 25, 2003 warrants treating the petition as filed on that date.  Indeed, his April 11, 2005 Memorandum specifically references the § 2255 motion filed in submitted in April 2003, stating that it was prepared with the assistance of Mr. Patton and noting that he was expanding his arguments because the Government had not yet answered.  Because the challenged conviction became final on July 29, 2002, the Court concludes that Perdomo's

habeas petition was filed within the one-year limitations period applicable to § 2255 actions.[3] 28 U.S.C. § 2255. Treating the habeas petition as timely filed permits the Court to reach the merits of his motion to vacate, set aside or correct his sentence, whereas the April 11, 2005 filing on which the January 9, 2007 dismissal Order is based resulted in a denial of relief without consideration of the merits. Moreover, crediting the assertion that the instant petition was submitted for filing in April 2003 falls in line with Third Circuit jurisprudence directing that a pro se habeas petition and any supporting submissions "must be construed liberally and with a measure of tolerance." Fadayiro v. United States, 30 F.Supp.2d 772, 774-75 (D.N.J. 1998) (citing Royce v. Hahn, 151 F.3d 116, 118 (3d Cir.1998) and United States v. Brierley, 414 F.2d 552, 555 (3d Cir.1969)).

---

[3] Section 2255 provides that the one-year period a defendant has to file for relief under the section runs from the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, the time began to run when Perdomo's conviction became final, as the other provisions do not apply. While Petitioner's § 2255 motion raises a claim under Booker, that claim does not have the effect of postponing the start date of the one-year filing period, the rule recognized by Booker was not "made retroactively applicable to cases on collateral review." See Point III.B., below.

For these reasons, reconsideration of the January 9, 2007 Order is necessary to prevent manifest injustice. The Court will therefore vacate the January 9, 2007 Order, re-open this action and adjudicate Perdomo's § 2255 motion on its merits.

### III.  MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

Title 28 U.S.C. § 2255 permits a prisoner in federal custody to attack the validity of his sentence as having been imposed in violation of the Constitution. United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989). Petitioner's April 25, 2003 submission bases the plea for relief under § 2255 on the claim that he was denied his Sixth Amendment right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970) (holding that Sixth Amendment guarantee of assistance of counsel to accused in criminal prosecution includes right to effective assistance of counsel). According to Petitioner, the legal representation he received was constitutionally deficient in the following ways:

> a. counsel was ineffective in advising me to plead guilty when I was ignorant of the cocaine conspiracy;
>
> b. counsel was ineffective in misrepresenting to me that my actions constituted sufficient evidence to establish guilty [sic];
>
> c. counsel was ineffective at sentencing on the ground that I should only be held responsible for the ten kilograms of cocaine that I found in my car.

(4/25/03 Motion at ¶ 6.) Perdomo alleges that his attorney, Mr. Rosenberg, induced him to plead guilty by misrepresenting to him that Perdomo's actions - limited, according to Perdomo, to work on a truck Perdomo did not know contained narcotics and his purchase and repair of vans that, unbeknownst to him, were used to transport the narcotics - sufficed to establish Perdomo's guilt of the conspiracy to distribute more than 500 kilograms of cocaine. Apart from alleging that he

received incorrect advice regarding the law of conspiracy, Perdomo also alleges that he lied to the Court (also on counsel's advice) at the plea hearing so that his plea would be accepted. He further contends that counsel's services were sub-standard in that Mr. Rosenberg was unprepared for trial, failed to argue at sentencing that Perdomo was a minor participant in the conspiracy and failed to advise Petitioner that he should plead guilty to the crime of misprision of felony.

In the April 11, 2005 Memorandum, Petitioner expanded his § 2255 motion to argue that he is entitled to re-sentencing under United States v. Booker, 543 U.S. 220 (2005).

The Court, in its discretion, will adjudicate his claims without an evidentiary hearing. Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). Third Circuit law instructs that an evidentiary hearing need not be conducted where a § 2255 motion, together with the underlying record, conclusively show that the Petitioner is not entitled to relief. Id.; see also Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001) (observing, in connection with an ineffective assistance of counsel claim, that "a defendant would not be entitled to a hearing if his allegations were contradicted conclusively by the record, or if the allegations were patently frivolous."). An evidentiary hearing is not required where the § 2255 motion does not raise an issue of material fact. Cf. United States v. Essig, 10 F.3d 968, 976 (3d Cir. 1994) (holding that when a § 2255 petition does raise an issue material fact, "the district court must hold a hearing to determine the truth of the allegations."). As the discussion below will make plain, this habeas petition does not present any issue of material of fact, and based on the record, Petitioner's ineffective assistance of counsel claim and claim for relief under Booker clearly lack merit.

A.      **Ineffective Assistance of Counsel**

The Supreme Court decision in Strickland v. Washington, 466 U.S. 668 (1984) sets forth the standard for establishing a claim that a habeas petitioner's Sixth Amendment right of effective assistance of counsel has been violated. The Strickland Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687. The Third Circuit has stressed relief under § 2255 based on a claim of ineffective assistance of counsel requires that the petitioner satisfy both prongs of the Strickland test: a breach of duty and prejudice as a result of that breach. Nino, 878 F.2d at 103-04. The petitioner bears the burden of proof to demonstrate ineffective assistance of counsel. United States v. Baynes, 622 F.2d 66, 69 (3d Cir. 1980).

Here, Perdomo challenges a conviction based on his own plea of guilty to the offense charged. In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Thus, "[u]nder Hill, a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of such a plea by showing that counsel's performance fell beneath the standard articulated in Strickland . . ." United States v. Ordaz, 111

F. App'x 128, 131-132 (3d Cir. 2004). To prevail on a Strickland claim, the petitioner "must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002).

Petitioner has offered nothing to satisfy either Strickland prong: he points to no evidence either that his attorney's representation fell below an objective standard of reasonableness, nor that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. In analyzing an attorney's performance in regards to an ineffective assistance of counsel claim, the Supreme Court directs that a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 698; George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001) (holding same). In light of this deferential standard, the Third Circuit has cautioned that "it is 'only the rare claim of ineffectiveness of counsel that should succeed.'" Buehl v. Vaughn, 166 F.3d (3d Cir. 1999) 163, 169 (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir.1989)).

Perdomo's allegations about Mr. Rosenberg's deficient performance at trial are wholly without merit, and indeed, may border on the frivolous. He complains that Mr. Rosenberg engaged in an "ad-lib defense through cross-examination." Indeed, Mr. Rosenberg did engage in witness cross-examination, which weakens rather than supports Perdomo's claims of constitutionally deficient assistance. Petitioner completely fails to identify what acts or omissions of his attorney's trial conduct were not the result of his reasonable professional judgment. Strickland, 466 U.S. at 690.

Perdomo's allegations relating to ineffective assistance at the sentencing hearing are similarly futile. The record contradicts Perdomo's assertions that his attorneys should have argued that Perdomo played a minor role in the conspiracy and otherwise attempted to minimize his sentence. His attorneys moved for a downward departure under the Sentencing Guidelines based on minor role. Mr. Rosenberg argued at the sentencing hearing for such a reduction, emphasizing Petitioner's lack of any substantial financial gain. He also argued that Petitioner's activity in the conspiracy was limited to providing a storage area and off-loading point for the drugs, pointing out that Perdomo himself was not engaged in drug sales. Though the argument was ultimately rejected by the sentencing judge, this fact alone does not render the attorneys' conduct constitutionally deficient. Moreover, as a result of his attorneys' efforts and arguments, Perdomo received a two-point Guidelines reduction for acceptance of responsibility.

Finally, Perdomo's claims of ineffective assistance revolving around his allegedly involuntary guilty plea are unsubstantiated. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Perdomo alleges that his attorney provided him with incorrect legal advice regarding his involvement in the conspiracy. Specifically, Petitioner argues that despite the fact that he was not aware that cocaine shipments were being stored at his garage until some time after he was interviewed by New Jersey State police and had not knowingly joined with the others in a common plan to store and transport cocaine, his attorney advised him that his acts

14

supported the charge that he participated in the conspiracy.  Petitioner argues that had he received accurate information from Mr. Rosenberg concerning the application of conspiracy law to Perdomo's actions, he would not have pled guilty to the conspiracy offense.  Rather, Petitioner states that his actions may at best have supported his guilt for the crime of misprision of felony[4] and suggests that his attorney erred in failing to advise him of this.

      Petitioner's belated and self-serving assertions that he lacked any knowledge of the object of the conspiracy and had not agreed to play a role in accomplishing its goal of distributing narcotics are completely at odds with his sworn statements to the Court.  At the plea hearing, he admitted under oath that he knowingly participated in the charged conspiracy for monetary gain.  His claims of receiving erroneous and prejudicial advice and of being essentially coerced by his attorney into pleading guilty are baseless.  Moreover, Petitioner's suggestion that he could have pleaded guilty to misprision of felony, had his attorney advised him correctly, amount to no more than mere speculation, as there is no evidence that the Government made a misprision plea offer or would even contemplate such a deal.  Thus, Petitioner's attempted disavowal of his guilty plea as involuntary fails.  He has not demonstrated that his attorney's advice, at the time it was given

---

[4] The crime miprision of felony concerns the concealment and/or failure to report a felony.  <u>Roberts v. United States</u>, 445 U.S. 552, 557-58(1980).  It is governed by 18 U.S.C. § 4, which provides:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

and based on the facts as established at the plea hearing, fell below the range of competence.

The Supreme Court has been clear that the burden on a convicted defendant challenging his conviction based on ineffective assistance of counsel is a heavy one. Strickland, 466 U.S. at 689-90. Perdomo's § 2255 motion falls far short of that burden. His allegations of deficient legal representation by his attorneys are at best unsupported and in fact often contradicted by a record of adequate and competent advocacy on his behalf.

Accordingly, the Court rejects Petitioner's claim that his conviction cannot stand on grounds that his Sixth Amendment right to effective assistance of counsel was violated. Though pro se habeas petitions must be construed liberally, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. Siers v. Ryan, 773 F.2d 37, 45 (3d Cir.1985), cert. denied, 490 U.S. 1025 (1989).

### B.     Booker Claim

Petitioner claims that, in the event his conviction withstands the ineffective assistance claim, he is entitled to re-sentencing under Booker. In Booker, the Supreme Court held that the provision of the Federal Sentencing Act that made the United States Sentencing Guidelines mandatory, 18 U.S.C. 3553(b)(1), violated the Sixth Amendment and therefore excised that provision. Booker, 543 U.S. at 258-59. For the reasons initially articulated by this Court in its January 9, 2007 Opinion, Booker does not apply to Petitioner's conviction.

It is settled that Booker announced a new rule of criminal procedure. Lloyd v. United States, 407 F.3d 608, 613 (3d Cir. 2005). A new rule of criminal procedure is not retroactively applicable unless it is a "watershed rule of criminal procedure implicating the fundamental

16

fairness and accuracy of the criminal proceeding." Id. at 612 (quoting Beard v. Banks, 542 U.S. 406, 417 (2004)).  The Third Circuit has held that Booker is not retroactively applicable to § 2255 motions where the judgment became final before the Booker decision was issued.  Id. at 615-16 (citing Teague v. Lane, 489 U.S. 288, 310 (1989)).  In so holding, the Third Circuit reasoned:

> By creating an advisory federal sentencing regime, the *Booker* Court did not announce a new rule of criminal procedure that significantly increases the "certitude" or "accuracy" of the sentencing process. As the Court of Appeals for the Seventh Circuit put it, *Booker* was not a " 'watershed' change that fundamentally improves the accuracy of the criminal process" because defendants' sentences "would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system."

Id. at 615 (quoting McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.2005)).

The Supreme Court issued the Booker decision on January 12, 2005, two-and-a-half years after Perdomo's judgment of conviction became final on July 29, 2002.  Booker does not apply. Thus, Petitioner's claim under Booker fails as a matter of law.

## IV.     CERTIFICATE OF APPEALABILITY

This Court must determine whether a certificate of appealability should issue.  L.A.R. 22.2. The Court should issue a certificate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

The Court finds that Perdomo has failed to make a substantial showing that his Sixth Amendment right to the effective assistance of counsel has been denied, and further has not shown that jurists of reason would find debatable that the petition fails to state a valid claim under Booker. Therefore, this Court declines to issue a certificate of appealability pursuant to § 2253(c)(2).

## V. CONCLUSION

For the foregoing reasons, this Court grants Petitioner's motion for reconsideration of the January 9, 2007 Order dismissing as untimely his petition for habeas corpus relief under § 2255. It accordingly vacates that Order and re-opens this action for consideration of the merits of the § 2255 motion. Reviewing the merits, the Court grants the Government's renewed motion to dismiss Perdomo's 28 U.S.C. § 2255 motion to vacate, set aside or correct his sentence. A certificate of appealability will not issue. An appropriate form of order will be filed together with this Opinion.

                                               s/ Stanley R. Chesler
                                               STANLEY R. CHESLER
                                               United States District Judge

DATED: February 25, 2009